**PACIFIC FINANCE CORPORATION,**
Appellant,

v.

**A. M. MITCHELL, Appellee.**

No. 7065.

Court of Civil Appeals of Texas.

Texarkana.

April 29, 1958.

**358**

Irion, Cain, Cocke & Magee, Cecil G. Magee, Dallas, for appellant.

Pat Beadle, Clarksville, for appellee.

CHADICK, Chief Justice.

This is a venue case. The judgment of the trial court overruling appellant's plea of privilege is affirmed.

In this Court the appellee seeks to uphold the trial court judgment by pleading and proof under Article 5073, Vernon's Texas Civ.St., which is the law permitting recovery of double the amount of interest paid under a usurious contract and which fixes the venue for trial of such cases. Appellee instituted his suit in a District Court of Red River County for the purpose of collecting the penalty provided in Article 5073, and for the alleged conversion of an automobile.

Mitchell is entitled to maintain venue in Red River County by proving that the contract between him and Pacific Finance Corporation, hereafter called Pacific, was usurious and that he had paid usurious interest to Pacific thereunder and that he, Mitchell, was residing in Red River County at the time the contract was entered into.

■ It is a familiar principle that when a judgment of a trial court is attacked as being without support in the evidence, as is the judgment in this case by appellant's 2d, 3rd and 4th points of error, the evidentiary facts and circumstances and the fair and reasonable inferences therefrom will be considered in the light most favorable to the judgment. 3B Tex.Jur.; Sec. 873, p. 278, and case cited in notes. So considering this record, there appears to be facts and circumstances amply supporting the judgment entered in the trial court.

■ Earnest counsel has centered its most plausible attack upon the alleged failure of Mitchell to prove the contract was usurious and that he actually paid Pacific interest in excess of the statutory maximum; therefore, that feature of the case will be briefly discussed. The evidence is without contradiction on the questions for review, except possibly in one instance which will be noted, and may be

fairly summed up as follows: Mitchell purchased an automobile from Marchbanks at an actual as well as a time-selling price of $2,966.48; his trade-in automobile was valued at $885, leaving a balance due Marchbanks of $2,081.48. The conditional sales contract and other loan papers were prepared in Marchbanks' office, under his direction by his bookkeeper with the assistance of Pacific's Greenville office manager and assistant manager. Marchbanks and his staff did not know how to prepare the papers because a "bumper note" was involved. The conditional sales contract, which is in evidence, required Mitchell to make 17 monthly payments of $60 each, beginning February 1, 1955, and an 18th payment of $1,531.44 for a total of $2,551.44, thus the sum of the payments exceeded the balance of $2,081.48 owed on the automobile by $469.96. The 17 monthly payments of $60 or a total of $1,020 was paid by Mitchell on the original contract.

When the 18th monthly installment of $1,531.44 was due, Mitchell and Pacific entered into a new contract. Mitchell testified that he was not given a copy and the writing evidencing this second contract is not in evidence; however, Pacific was represented at the hearing and failed to offer any evidence rebutting that offered by Mitchell concerning this second contract, and it is a fair conclusion that Pacific had possession of the second contract but did not care to tender it in evidence. A coupon book furnished Mitchell by Pacific and three payment receipts issued to Mitchell were introduced. From the evidence in the record the second contract began September 1, 1956, and required payments of $73.88 monthly. Some insurance was bought in connection with this second contract, but the evidence does not disclose whether or not it is included in the monthly installments. Aside from the fact that a new contract was entered into obligating Mitchell to pay the $1,531.44 balance of the first contract, the complete terms, conditions and obligations of the second contract cannot be deciphered from the record.

Pacific contends that under these facts Mitchell failed to prove that payments made were either: (1) specified by him at the time as being payments for interest and not principal; or (2) that there was a specific agreement as to what amount of each payment would be principal and what amount was to be interest; or (3) the payments were specifically applied to interest; and that in the absence of proof of one of these three alternatives, the law applies the money paid to the legal portion of the contract, that is, to principal, and only the amount paid in excess of principal to interest. In support of its position Pacific cites numerous cases, the essence of their holdings being aptly stated by 21 R.C.L. p. 102, Sec. 108, as follows:

"The application of a payment not having been directed, the law will, as between a legal and an illegal debt, apply it on the legal debt. So the principle of law which applies such unappropriated payment first to discharge the interest due and then reduce the principal cannot operate in the case of usurious interest, for all interest is forfeited eo instanti by an agreement to pay interest at an illegal rate, and payments will not be applied by operation of law to the discharge of unlawful obligations in preference to debts justly due."

In 1935, the Commission of Appeals in an opinion by Judge Smedley, adopted by the Supreme Court, in the case of Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S. W.2d 939, 941, held: "In the first place, it is not entirely accurate to say, since the enactment of the penalty statute in 1892, that payments of interest on a contract affected with usury are by law applied to the principal." While recognizing a difference in the factual situation of the Adleson case and this, it is thought that the rule contended for by Pacific is not sound under this record. In the Adleson case the installment payments were expressly made to both principal and interest. In this case the contract is silent as to how payments

are to be applied and Mitchell gave no directions. On principal there is no distinction, however, as the payments in this case are to extinguish the total which is made up of principal and interest and the reasonable construction is that payments should be applied to extinguish interest as it accrues with the remainder going to reduce the principal. The trial court's judgment is correct under authority of this case and Rosetti v. Lozano, 96 Tex. 57, 70 S.W. 204. He had before him ample evidence that an exaction in excess of 10% per annum was required of Mitchell in the first contract, it being patently usurious under the evidence.

Mitchell offered evidence that the automobile involved was seized by Pacific and no further demand had thereafter been made on him for payment of the balance of the second note; there is evidence in the record that Pacific advised Marchbanks prior to seizure of the automobile that it would be seized if the balance was not received by a certain date and sold to the highest bidder and any loss charged to his reserve. Marchbanks testified no charge had been made to his reserve. From this evidence the trial judge could properly conclude after seizure the car was sold for enough to pay the delinquent balance and cost. Under authority of Woodman v. Bishop, Tex.Civ.App., 203 S.W.2d 977, the judgment of the trial court may be sustained under the facts outlined.

In cross-examining Marchbanks' bookkeeper, counsel for Pacific drew from her testimony which Pacific contends shows that the $469.96 alleged to be interest might have incorporated in it the cost of insurance carried upon the automobile Mitchell purchased, and that Mitchell offered the witness and is conclusively bound by her testimony. If the evidence pointed out is subject to that construction, it is not conclusive on the trial court. Aetna Life Ins. Co. v. Love, Tex.Civ.App., 149 S.W.2d 1071; 45 Tex.Jur., Sec. 301, p. 190. From other evidence the trial court could have,

and apparently did conclude that the cost of insurance was not a part of the $469.96 item.

Marchbanks as a witness testified that $469.96 added to the indebtedness of $2,081.48 was interest. The evidence shows that he sold the car to Mitchell and handled all the particulars of the transaction except to make out the loan papers, in that particular having the assistance of Pacific's manager. Under elementary rules of evidence, he is shown to have such knowledge of the transaction as to give his testimony probative force.

Mitchell does not seek to sustain venue by proof under his conversion pleading and in so far as Pacific's 1st and 4th points are directed to that ground, such points are sustained; and the trial court judgment is affirmed upon the other grounds discussed. Pacific's 2d, 3rd and that part of the 4th point seeking to reverse the judgment under the usury statute are respectfully overruled, and the judgment of the trial court is affirmed.